## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MELVIN GENE TUCKER II,

                    *Plaintiff,*

v.

MICHIGAN STATE UNIVERSITY,
TERESA K. WOODRUFF, ALAN
HALLER, and BRIAN QUINN, each
as an employee and member of the
Administration of Michigan State
University sued in their individual
capacities jointly and severally;
DIANNE BYRUM, DAN KELLY,
SANDY PIERCE, KELLY TEBAY,
DENNIS DENNO, RENEE KNAKE
JEFFERSON, BRIANNA T. SCOTT,
and REMA VASSAR, each a member
of the BOARD OF TRUSTEES of
Michigan State University, sued in
their individual capacities, jointly and
severally,

                    *Defendants.*

Case No. 1:24-cv-00795

Hon. Paul L. Maloney,
U.S. District Judge

Hon. Phillip J. Green,
U.S. Magistrate Judge

**Oral Argument Requested**

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I. TUCKER FAILS TO STATE A PLAUSIBLE CLAIM (COUNTS I–IX)...............................................................................2

  A. Tucker Fails to State a Due Process Claim (Counts I–II)..........2

  B. Tucker Fails to State a Discrimination Claim (Counts III & IX). ....................................................................5

  C. Tucker Fails to State a Breach of Contract Claim (Count IV). ........................................................................7

  D. Tucker Fails to State a State Tort Claim (Counts V–VIII)......13

II. TUCKER'S TORT CLAIMS ARE OTHERWISE BARRED BY FEDERAL AND STATE IMMUNITIES (COUNTS I–III, V–VIII). ...............................................................22

  A. Tucker's Claims Against MSU and Its Board Are Barred by State Agency Immunity (Counts V–VIII). ........................22

  B. Tucker's Claims Against MSU Officers Are Otherwise Barred by Federal and State Qualified Immunities (Counts I–III and V–VIII)........................................24

CONCLUSION ....................................................................................................26

# TABLE OF AUTHORITIES

**Page**

C ASES

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ..............................................................6, 7

*Amini v. Oberlin Coll.*,
   440 F.3d 350 (6th Cir. 2006) ..................................................................5

*Arendale v. City of Memphis*,
   519 F.3d 587 (6th Cir. 2008) ..................................................................5

*Arsan v. Keller*,
   784 F. App'x 900 (6th Cir. 2019) ..........................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................6, 10

*Baum v. Springport Tel. Co.*,
   2002 WL 551094 (Mich. Ct. App. Apr. 12, 2002) ..............................12

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013),
   *aff'd*, 807 F.3d 541 (2d Cir. 2015)..................................................17, 18

*Borough of Duryea v. Guarnieri*,
   564 U.S. 379 (2011)................................................................................26

*Briggs v. Univ. of Detroit-Mercy*,
   2014 WL 1818000 (E.D. Mich. May 7, 2014) ....................................18

*Brock v. Consol. Biomed. Labs.*,
   817 F.2d 24 (6th Cir. 1987) ..................................................................14

*Brown Jug, Inc. v. Cincinnati Ins. Co.*,
   27 F.4th 398 (6th Cir. 2022) ................................................................10

# TABLE OF AUTHORITIES

**Page**

*Brugger v. City of Holland*,
    2014 WL 2743073 (Mich. Ct. App. May 29, 2014)............................................8

*Carrasco v. Spectrum Health Hosps.*,
    2008 WL 351647 (W.D. Mich. Feb. 6, 2008) ......................................................8

*Cole v. Knoll, Inc.*,
    984 F. Supp. 1117 (W.D. Mich. 1997) .........................................................20, 21

*Convergent Grp. Corp. v. Cnty. of Kent*,
    266 F. Supp. 2d 647 (W.D. Mich. 2003) ......................................................13, 14

*Crestmark Bank v. Electrolux Home Prod., Inc.*,
    155 F. Supp. 3d 723 (E.D. Mich. 2016) .......................................................15, 16

*Fed. Publ'ns, Inc. v. Bd. of Trustees of Mich. State Univ.*,
    594 N.W.2d 491 (Mich. 1999)...........................................................................23

*Ferrett v. Gen. Motors Corp.*,
    475 N.W.2d 243 (Mich. 1991)...........................................................................13

*Fieger v. Cox*,
    524 F.3d 770 (6th Cir. 2008) ..............................................................................4

*Genesee Intermediate Sch. Dist. v. City of Flint Sch. Dist.*,
    2020 WL 4915430 (Mich. Ct. App. Aug. 20, 2020) .........................................19

*Graham v. Ford*,
    604 N.W.2d 713 (Mich. Ct. App. 1993)............................................................20

*Hardesty v. Kroger Co.*,
    758 F. App'x 490 (6th Cir. 2019)......................................................................26

*Hart v. Ludwig*,
    79 N.W.2d 895 (Mich. 1956)..............................................................13, 14, 20

## TABLE OF AUTHORITIES

**Page**

*HDC, LLC v. City of Ann Arbor*,
675 F.3d 608 (6th Cir. 2012) ...................................................................6

*Heyne v. Metro. Nashville Pub. Sch.*,
655 F.3d 556 (6th Cir. 2011) ...................................................................5

*In re Flint Water Cases*,
384 F. Supp. 3d 802 (E.D. Mich. 2019) .................................................5

*Jackson v. City of Cleveland*,
925 F.3d 793 (6th Cir. 2019) ...................................................................4

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989)...................................................................................5

*Kaminski v. Coulter*,
865 F.3d 339 (6th Cir. 2017) .................................................2, 3, 4, 25

*Kollaritsch v. Mich. St. Univ. Bd. of Trustees*,
944 F.3d 613 (6th Cir. 2019) .................................................................24

*Kuhn v. Washtenaw Cty.*,
709 F.3d 612 (6th Cir. 2013) .................................................................15

*Ledl v. Quik Pik Food Stores, Inc.*,
349 N.W.2d 529 (Mich. Ct. App. 1984)................................................17

*Mack v. City of Detroit*,
649 N.W.2d 47 (2002) .......................................................................23, 25

*Maiberger v. City of Livonia*,
724 F. Supp. 2d 759 (E.D. Mich. 2010) .........................................15, 16

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) .................................................................18

# TABLE OF AUTHORITIES

**Page**

*McCormick v. Miami Univ.*,
    693 F.3d 654 (6th Cir. 2012) ................................................................6, 25

*Merchants Pub. Co. v. Maruka Mach. Corp. of Am.*,
    800 F. Supp. 1490 (W.D. Mich. 1992) ................................................14

*Mitan v. Campbell*,
    706 N.W.2d 420 (Mich. 2005)................................................................17

*Nicholl v. Torgow*,
    950 N.W.2d 535 (Mich. Ct. App. 2019)................................................19

*Parker v. Fed. Exp. Corp.*,
    2010 WL 3803459 (E.D. Mich. Sept. 23, 2010) ................................22

*PB&J Towing Serv. I & II, LLC v. Hines*,
    2022 WL 390599 (6th Cir. Feb. 9, 2022) ..............................................4

*People v. Tennyson*,
    790 N.W.2d 354 (Mich. 2010)................................................................11

*Prime Fin. Servs. LLC v. Vinton*,
    761 N.W.2d 694 (Mich. Ct. App. 2008)................................................19

*Radiant Glob. Logistics, Inc. v. BTX Air Express of Detroit LLC*,
    2021 WL 1313236 (E.D. Mich. Apr. 8, 2021) ....................................19

*Ramsey v. Bd. of Educ. of Whitley Cnty.*,
    844 F.2d 1268 (6th Cir. 1988) ................................................................3

*Rapp v. Dutcher*,
    557 F. App'x 444 (6th Cir. 2014) ..........................................................4

*Reed v. Mich. Metro Girl Scout Council*,
    506 N.W.2d 231 (Mich. Ct. App. 1993)................................................15

# TABLE OF AUTHORITIES

**Page**

*Robinson v. City of Detroit*,
    613 N.W.2d 307 (Mich. 2000)....................................................................25, 26

*Rudolph v. Lloyd*,
    807 F. App'x 450 (6th Cir. 2020) .........................................................23

*Satgunam v. Kiley*,
    2020 WL 13546501 (W.D. Mich. Nov. 12, 2020) .............................................21

*Siddock v. Grand Trunk W. R.R.*,
    556 F. Supp. 2d 731 (W.D. Mich. 2008) .........................................22, 23, 25, 26

*Siefert v. Hamilton Cnty.*,
    951 F.3d 753 (6th Cir. 2020) ...................................................................4

*Sifuentes v. Laser Access LLC*,
    2023 WL 2245710 (W.D. Mich. Feb. 10, 2023) ................................................21

*Springs v. U.S. Dep't of Treasury*,
    567 F. App'x 438 (6th Cir. 2014) .................................................................20, 21

*Stack v. K-Mart Corp.*,
    1996 WL 33348776 (Mich. Ct. App. Nov. 8, 1996) .......................................8, 9

*Stopcynski v. Ford Motor Co.*,
    503 N.W.2d 912 (Mich. Ct. App. 1993)..............................................................20

*Superior Commc'ns v. City of Riverview, Michigan*,
    881 F.3d 432 (6th Cir. 2018) .................................................................2

*Sweeney v. Visalus, Inc.*,
    2017 WL 6502935 (Mich. Ct. App. Dec. 19, 2017)........................................8, 9

*Taylor Acquisitions, L.L.C. v. City of Taylor*,
    313 F. App'x 826 (6th Cir. 2009) ...............................................................3, 9

# TABLE OF AUTHORITIES

**Page**

*Taylor v. Spectrum Health Primary Care Partners*,
2015 WL 8539499 (Mich. Ct. App. Dec. 10, 2015)............................................8

*Thomas v. John Deere Corp.*,
517 N.W.2d 265 (Mich. Ct. App. 1994)................................................7, 8, 9, 10

*Thompson v. City of Lansing*,
410 F. App'x 922 (6th Cir. 2011) ........................................................5

*Uraz v. Mich. State Univ. Bd. of Trs.*,
2019 WL 2442314 (W.D. Mich. June 12, 2019)................................................22

*Urban Assocs., Inc. v. Standex Elecs., Inc.*,
216 F. App'x. 495 (6th Cir. 2007) ........................................................16

*Vaughn v. U.S. Small Bus. Admin.*,
65 F.3d 1322 (6th Cir. 1995) ........................................................24, 25

*Veenstra v. Washtenaw Country Club*,
645 N.W.2d 643 (Mich. 2002)........................................................12

*Williams v. Zurz*,
503 F. App'x 367 (6th Cir. 2012) ........................................................24

*Young v. Am. Diabetes Assoc.*,
30 F. App'x 360 (6th Cir. 2002) ........................................................12

*Zdravkovski v. Charter Twp. of Redford*,
696 F. Supp. 3d 409 (E.D. Mich. 2023) ........................................................17

## STATUTES

42 U.S.C. § 1981 ........................................................passim

42 U.S.C. § 1983 ........................................................2, 4, 25

## TABLE OF AUTHORITIES

**Page**

MCL 390.102 ........................................................................................22

MCL 600.2911(6) ................................................................................17

MCL 691.1407 ......................................................................22, 23, 25, 26

MCL 750.29 .........................................................................................12

## INTRODUCTION

Plaintiff Mel Tucker coached Michigan State University's football team under a contract that permitted "termination" if he "materially breache[d] this agreement" or "engage[d] in any conduct . . . which, in the University's reasonable judgment, would tend to bring public disrespect, contempt, or ridicule upon the University." ECF No. 1, ¶ 116, PageID.36. After the University brought in a sex-abuse survivor to provide sexual-misconduct training to the football team, she reported that Tucker "made unwelcome sexual advances towards her and masturbated on a phone call with her without her consent." ECF No. 1-3, PageID.94. As reported by the media, and even after responding through counsel, Tucker admitted he had made comments "regarding her appearance" and engaged in "extramarital" "flirtation" "and phone sex." ECF No. 1-4, PageID.114, 116. For that reason and others, Tucker was fired.

Merely to describe this undisputed fact pattern is to defeat any possible claim. But here we are: Tucker has filed a 72-page, kitchen-sink complaint—invoking everything from 42 U.S.C. § 1981 to Intentional Infliction of Emotional Distress—against Michigan State University and its Trustees and other officers. In doing so, Tucker seeks to transform a meritless breach-of-contract claim into an $80-million-dollar conspiracy. Tucker's claims all fail on the face of the pleadings, which include his employment contract and related records. And most of Tucker's claims are also barred by federal and state qualified immunities. This suit should thus be dismissed.

**ARGUMENT**

**I.    TUCKER FAILS TO STATE A PLAUSIBLE CLAIM (COUNTS I–IX).**

Tucker fails to state a single plausible claim for relief. The Section 1983 and 1981 claims are not even actionable, let alone plausible, in this context. The breach-of-contract claim fails because it is both unreviewable and implausible given all that transpired. And all the other state-law claims fail for myriad more reasons.

**A.    Tucker Fails to State a Due Process Claim (Counts I–II).**

To begin, Tucker fails to state a procedural due process claim under 42 U.S.C. § 1983 because his contract provided any process due. He fails to state a derivative conspiracy claim for the same reason, and because he cannot evade the intra-corporate conspiracy doctrine and otherwise fails to plead conspiracy with the specificity required by precedent.

***Due Process Claim (Count I).*** "Because a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017). To assess whether such a remedy exists, courts examine whether "the thrust of the plaintiffs' argument is simply breach of contract." *Id.*; *see, e.g.*, *Superior Commc'ns v. City of Riverview, Michigan*, 881 F.3d 432, 445–46 (6th Cir. 2018) (affirming dismissal of due process claim because the proffered property and liberty interests arose from a contract).

-2-

This rule specially applies where a "state actor is one of the contracting parties." *Kaminski*, 865 F.3d at 348 (citing *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)). After all, "it is neither workable nor within the intent of [S]ection 1983 to convert every breach of contract claim against a state into a federal claim." *Ramsey*, 844 F.2d at 1273; *see, e.g.*, *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830–33 (6th Cir. 2009) (affirming dismissal of due process claim because "the only difference between this case and any other garden-variety breach of contract case is that [a state actor] happened to be one of the contracting parties").

Here, the stated "thrust" of this suit is the alleged breach of contract: "This action arises from Defendants' unlawful termination of Plaintiff's employment." ECF No. 1, ¶ 1, PageID.4; *see, e.g.*, *id.* ¶ 26, PageID.13 (alleging that claims "arise under and relate to the Employment Agreement and MSU's breach thereof"). If there were any doubt about the "thrust" of this suit, Tucker's own due process allegations confirm it. *See, e.g.*, *id.*, ¶ 223, PageID.62 ("Plaintiff had a property interest in his 2021 Employment Agreement and in having the Defendants comply with its terms."). Pair all that with Defendants' status as "state actor[s]," and the result is clear: the due process claim in Count I fails. *Kaminski*, 865 F.3d at 348.

**Conspiracy Claim (Count II).** The same fate befalls the "conspiracy" claim in Count II. *Kaminski* bars due process "conspiracy" claims, too. And irrespective

-3-

of *Kaminski*, the claim cannot evade the intra-corporate conspiracy doctrine and otherwise fails to plead supporting facts with the requisite specificity.

*First*, a "claim for civil conspiracy under [Section] 1983 exists only if the plaintiff has established a separate and actionable constitutional injury." *PB&J Towing Serv. I & II, LLC v. Hines*, 2022 WL 390599, at *5 (6th Cir. Feb. 9, 2022). That is, a Section 1983 conspiracy claim necessarily fails where the underlying claim fails. *See id.*; *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014). Because the Section 1983 claim fails, *supra*, the derivative conspiracy claim fails too.

*Second*, the intra-corporate conspiracy doctrine bars Section 1983 conspiracy claims "where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). That is all Tucker has alleged here. ECF No. 1, ¶ 239, PageID.64 (alleging that employees acted "to create a vehicle for MSU and the Individual Defendants to [terminate his contract]").

*Third*, "it is well-settled that conspiracy claims must be pled with some degree of specificity." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020). This standard is "relatively strict," *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008), and requires plausibly establishing an agreement and unlawful objective. *Siefert*, 951 F.3d at 768. Tucker falls far short on both, as he offers nothing more than

"conclusory allegations unsupported by material facts." *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 563 (6th Cir. 2011); *see Arsan v. Keller*, 784 F. App'x 900, 914–15 (6th Cir. 2019); ECF No. 1, ¶¶ 240–41, PageID.64–65 (alleging Defendants "actively and voluntarily participated in a plan to violate Plaintiff's constitutional rights" and that they "shared in the objective").

### B.    Tucker Fails to State a Discrimination Claim (Counts III & IX).

Tucker also fails to state discrimination or equal protection claims under either 42 U.S.C. § 1981 or Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Section 1981 bars "intentional race discrimination" that abridges one's right to contract. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Like Section 1981, ELCRA prohibits "intentional race discrimination," albeit in wider contexts. *See In re Flint Water Cases*, 384 F. Supp. 3d 802, 850 (E.D. Mich. 2019); *Thompson v. City of Lansing*, 410 F. App'x 922, 934 (6th Cir. 2011) (noting the "same standards" apply to "claims of racial discrimination" under Section 1981 and ELCRA). Here, Section 1981 does not apply to MSU or its officers at all, and Tucker otherwise fails to plausibly plead intentional discrimination under Section 1981 or ELCRA.

*First*, Section 1981 claims against the State are categorically barred. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989); *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008). That bar extends to claims not only against the State and its officers in their official capacities, but also officers in their individual

-5-

capacities. *See McCormick v. Miami Univ.*, 693 F.3d 654, 656 (6th Cir. 2012) (holding that *Jett* "bar[s] using § 1981 as a mechanism to sue state actors in their individual capacities"). As a result, Tucker's Section 1981 claim fails to get off the ground. ECF No. 1, ¶ 249, PageID.66.

*Second*, Tucker's Section 1981 and ELCRA claims fail because there was no plausible racial discrimination. "[C]onclusory allegations of discriminatory intent without supporting factual allegations do[] not sufficiently show entitlement to relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). Alleging that Tucker "is Black," ECF No. 1, ¶¶ 248, 302, PageID.66, 73, "does not by itself establish the requisite inference" of discrimination. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013). That is especially so when the "most obvious explanation" for Tucker's termination is his own admitted misconduct. *See id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see, e.g.*, ECF No. 1-2, PageID.90; ECF No. 1-4, PageID.114 (admitting to conversations with an MSU sexual-misconduct trainer regarding her "appearance, flirtation, and phone sex"). Indeed, Tucker alleges throughout his complaint that MSU terminated him for *financial* reasons, not racial reasons. *See, e.g.*, ECF No. 1, ¶ 6, PageID.6; *see also In re Flint Water Cases*, 384 F. Supp. 3d at 848–51. And the records attached to Tucker's complaint—including his own response to the termination notice—do not even remotely (much less plausibly) suggest that his race had anything to do with

the decision to terminate his contract. *See, e.g.*, ECF No. 1-3, PageID.93–94 (MSU listing numerous facts warranting termination in notice); ECF No. 1-4, PageID.111–22 (Tucker failing to allege racial discrimination in response to notice). Because "discrimination is not a plausible conclusion," the Section 1981 and ELCRA claims "merit[] dismissal" on this basis, as well. *16630 Southfield*, 727 F.3d at 506.

### C. Tucker Fails to State a Breach of Contract Claim (Count IV).

Tucker fails to state a plausible breach claim because his contract enabled MSU to terminate him in its own "reasonable judgment" under the applicable circumstances. That provision does not allow a court to second-guess that determination, and even if it did, Tucker's claim is utterly implausible.

*First*, the breach-of-contract claim is unreviewable because an applicable clause in Tucker's contract permitted his termination "for cause" as determined "in the University's reasonable judgment." ECF No. 1-1, § III.B.1, PageID.83. "[P]arties to an employment contract are free to bind themselves to whatever termination provisions they wish." *Thomas v. John Deere Corp.*, 517 N.W.2d 265, 267 (Mich. Ct. App. 1994). Relevant here, a termination provision can "reserve[] for [the employer] the authority to determine whether there [i]s good and just cause . . . for terminating [an employee's] employment." *Id.* If "the particular employment contract" includes such a provision, then courts cannot "second-guess [the employer's] determination." *Id.*

-7-

The question often becomes whether a particular provision did indeed "reserve[] for [the employer] the authority" to make the cause determination. *Id.* Several examples of valid reservations of authority are illustrative (boldface added):

- "ViSalus reserves the right to use its **best judgment** in deciding whether certain IP activities are unethical and if determined so, are grounds for terminating or deactivating the IP position. If for any reason an IP violates any of the terms of the Agreement and/or these Policies and procedures, ViSalus reserves the right to immediately deactivate or terminate the IP's position." *Sweeney v. Visalus, Inc.*, 2017 WL 6502935, at *8 (Mich. Ct. App. Dec. 19, 2017).

- "Any termination of this Agreement and your employment by [defendant], whether Without Cause, For Cause, or Summary Termination, **will be made** by [the Board] following a thorough review and determination by the Professional Standards committee [PSC] in consultation with your Department Chief." *Taylor v. Spectrum Health Primary Care Partners*, 2015 WL 8539499, at *1 (Mich. Ct. App. Dec. 10, 2015).

- "'Just cause' for discharge exists whenever a covered employee engages in any action or conduct, whether or not specifically identified in this Handbook, that warrants discharge. The City, **in its sole discretion** determines whether the employee's action or conduct warrants discharge." *Brugger v. City of Holland*, 2014 WL 2743073, at *1 (Mich. Ct. App. May 29, 2014).

- "Spectrum Health will terminate a staff member's employment only if it has cause to do so. 'Cause' for termination includes problems with performance … Problems with performance include, but are not limited to, a pattern of unsatisfactory job performance (as documented and determined by Spectrum Health **in its discretion**)[.]" *Carrasco v. Spectrum Health Hosps.*, No. 1:06-CV-781, ECF No. 26-9, PageID.93 (W.D. Mich. Aug. 22, 2007); *see id.*, 2008 WL 351647, at *8 (W.D. Mich. Feb. 6, 2008).

- "**[I]f it is determined** by the []Committee . . . that fraud, dishonesty, or similar acts were committed by an optionee . . . all options and all rights with respect to all options granted to such optionee shall immediately terminate and be null and void." *Stack v. K-Mart Corp.*, 1996 WL 33348776, at *1 (Mich. Ct. App. Nov. 8, 1996).

In all of these cases, the courts found the breach-of-contract claims unreviewable under the *Thomas* framework, because the contracts had vested discretion in the employers—not the courts—to make the good-cause determinations.

Here, the relevant contract provision states:

> **The University may terminate this Agreement prior to the expiration of its term at any time, for cause, without liability to the Coach or any other penalty**. **Cause for such termination, includes, without limitation, the following:** (a) the Coach materially breaches this Agreement; (b) the Coach is convicted of a crime, other than a minor traffic offense; **(c) the Coach engages in any conduct** which constitutes moral turpitude or **which, in the University's reasonable judgment, would tend to bring public disrespect, contempt, or ridicule upon the University** (e.g., material insubordination or impropriety involving a student).

ECF No. 1-1, § III.B.1, PageID.83 (emphasis added). The "in the University's reasonable judgment" clause is more than sufficient to shield MSU's decision from judicial review. MSU made its good cause determination under that clause on "an independent basis." ECF No. 1-3, PageID.94. Tucker admits as much. ECF No. 1, ¶ 197, PageID.56 (citing clause). This "reasonable judgment" provision is materially indistinguishable from the provision in *Sweeney* ("best judgment"). And it provides an even clearer reservation of authority than the provisions at issue in cases like *Taylor* ("will be made by the Board") and *Stack* ("if it is determined by the Committee"). The "would tend to bring" language only underscores the University's sole discretion to make the determination regarding actual or anticipated "public disrespect, contempt, or ridicule." ECF No. 1-1, § III.B.1, PageID.83.

-9-

In short, Michigan State University—not an Article III judge—was vested with the "authority" to make the "cause" determination. *Thomas*, 517 N.W.2d at 267. And because Tucker's own records admit that the University found "cause" on a basis set forth *in the contract*, and that independent basis sufficed for termination, the breach claim necessarily fails. *See* ECF No. 1-4, PageID.111-112.

*Second*, even if the termination were somehow reviewable, Tucker fails to state a plausible claim. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted). That same principle extends to breaches of contract. *See Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 404 (6th Cir. 2022). Where a party's "factual allegations" are "merely consistent with" a breach, the claim must be dismissed. *Id.*

Here, Tucker's theory is that MSU breached his contract because it lacked cause to fire him. ECF No. 1, ¶ 260, PageID.67. But he attaches MSU's notice that explains in spades why "cause" existed for termination. The grounds need not all be repeated here, as they are in the record for the Court to review, but the bases for termination arose from Tucker's misconduct towards a sex-abuse survivor and trainer who had been retained to provide sexual-misconduct training to the football team that he coached. ECF No. 1-3, PageID.93–95. Even after having an opportunity to respond through counsel, Tucker admitted he had made comments "regarding her

-10-

appearance" and engaged in "extramarital" "flirtation" "and phone sex." ECF No.

1-4, PageID.114, 116. Ultimately, MSU concluded ("in [its] reasonable judgment")

that Tucker's behavior "would tend to bring"—*and in fact had brought*—"public

disrespect, contempt, and ridicule upon the University." ECF No. 1-3, PageID.96.

On another "independent basis," MSU *also* determined that Tucker

"materially breache[d]" the contract by not "conducting himself professionally and

ethically . . . at all times." *Id.* at PageID.95. After all, it was "decidedly

unprofessional and unethical to flirt, make sexual comments, and masturbate while

on the phone with a University [trainer]"—one who "was contracted by the

University for the sole purpose of educating student-athletes on, and preventing

instances of, inappropriate sexual misconduct." *Id.*[1]

For his part, Tucker did not—and has never—disputed that "public disrespect,

contempt, [or] ridicule upon the University" resulted from "this matter." ECF No. 1-

4, PageID.118. His only response has been to say that "the University brought that

on itself." *Id.* But the clause's plain language imposed a "would tend to bring"

standard—meaning, "that it is possible to conclude from the available information

and circumstances that something is 'more likely than not' to occur." *People v.*

---

[1] To be clear, there are still other grounds and provisions that justified MSU's
cause determination in this case, as the notice establishes. *See id.*, PageID.93–97.
However, one or both of these "independent bas[e]s" for "dismissal" provide the
cleanest paths on the pleadings for a finding that Tucker's claim is not plausible. *Id.*

*Tennyson*, 790 N.W.2d 354, 359 (Mich. 2010). Tucker can deflect all he wants, but he cannot plausibly allege that the University failed to satisfy this standard under the circumstances. ECF No. 1-3, PageID.96 (citing media articles).

Nor can Tucker plausibly contend that his "admitted conduct—engaging in sexual extramarital behavior with a University [sexual-misconduct trainer]"—was somehow "professional and ethical." *Id.*, PageID.95. He said that "he *did* act professionally and ethically at all times," because "[i]t is not unprofessional or unethical to engage in intimate," "extramarital" "acts," "off duty, with another adult, just because [she] provided services *one time* to the University." ECF No. 1-4, PageID.115, 116. But the dictionary says otherwise. *Unethical*, MERRIAM-WEBSTER DICTIONARY (2024) ("not conforming to a high moral standard"). So does precedent. *See, e.g.*, *Young v. Am. Diabetes Assoc.*, 30 F. App'x 360, 365 (6th Cir. 2002) (finding "sexually explicit comments," among others, constituted "just cause"); *Baum v. Springport Tel. Co.*, 2002 WL 551094, at *5 (Mich. Ct. App. Apr. 12, 2002) (finding a "concern about plaintiff's ability to deal effectively with the public . . . given the community backlash against her conduct in engaging in an extramarital affair" was a "legitimate" "reason"); *see also Veenstra v. Washtenaw Country Club*, 645 N.W.2d 643, 646–47 & n.3 (Mich. 2002) (citing MCL 750.29) (rejecting the notion that "adulterous behavior is protected" under Michigan law). And Tucker's "off duty" defense is foreclosed by the contract's requirement that he act

-12-

"professionally and ethically . . . at *all times*." ECF No. 1-1, § I.C.15, PageID.78 (emphasis added).

In short, Tucker's breach-of-contract claim is unreviewable and otherwise utterly implausible.

### D.   Tucker Fails to State a State Tort Claim (Counts V–VIII).

Tucker's kitchen-sink complaint also fails to state a viable claim for tortious interference (Count V), defamation (Count VI), aiding and abetting (Count VII), or intentional infliction of emotional distress (Count VIII). As an initial matter, *all* of these common-law tort claims are barred by Michigan's *Hart* doctrine. And even if that doctrine does not apply to one or more claims, they still fail for other reasons.

***Hart Doctrine.*** Tucker's claims allegedly "arise under and relate to the Employment Agreement and MSU's breach thereof," ECF No. 1, ¶ 26, PageID.13, and are thus barred by a variant of the economic-loss doctrine. *See Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956). The doctrine extends to "employment contract[s]." *Ferrett v. Gen. Motors Corp.*, 475 N.W.2d 243, 246 (Mich. 1991) (barring claim for negligent evaluation). And it bars all tort claims that are "based upon the same conduct giving rise to the defendant's alleged breach of contract." *Convergent Grp. Corp. v. Cnty. of Kent*, 266 F. Supp. 2d 647, 660–61 (W.D. Mich. 2003) (citation omitted). In *Convergent*, for example, the court dismissed fraud claims that were premised on a defendant's alleged "false representations of material fact regarding

the performance of [the plaintiff's] contractual obligations." 266 F. Supp. 2d at 660; *see Merchants Pub. Co. v. Maruka Mach. Corp. of Am.*, 800 F. Supp. 1490, 1493 (W.D. Mich. 1992) (barring tort claims because the "operative allegations in the claims would not arise without the existence of the putative contracts between the parties") (citing *Brock v. Consol. Biomed. Labs.*, 817 F.2d 24 (6th Cir. 1987)).

Tucker centers his tort claims against various MSU Defendants on his contract: the tortious interference claim alleges that they "conspired to cause the breach of Plaintiff's valid contract." ECF No. 1, ¶ 270, PageID.69. The defamation claim alleges that they made "false statements" that "were designed to, and did, impugn [Tucker's] . . . employment status." *Id.* ¶ 278, PageID.70. The aiding-and-abetting claim alleges that they "creat[ed] a false predicate to thereafter terminate his agreement." *Id.* ¶ 284, PageID.71. The IIED claim alleges that they took actions to "control the investigation and create a pretextual basis to terminate [Tucker]." *Id.* ¶ 288. And each claim asserts that the alleged breach of contract and/or related damages were "a direct and proximate result" of the tort. *See, e.g.*, *id.* ¶ 280, PageID.70 (alleging "loss of [the] position as head coach"). These claims are plainly "based upon the same conduct giving rise to the [] alleged breach of contract," *Convergent*, 266 F. Supp. 2d at 660–61, or otherwise have "operative allegations" that "would not [have] arise[n] without the existence of the [] contract[]." *Merchants*, 800 F. Supp. at 1493. As a result, the *Hart* rule bars all the common-law tort claims.

***Tortious Interference (Count V).*** Tucker separately fails to state a viable tortious interference claim. A claim for tortious interference with contract has three elements: "(1) the existence of a contract; (2) a breach of the contract; and (3) an unjustified instigation of the breach by the defendant." *Crestmark Bank v. Electrolux Home Prod., Inc.*, 155 F. Supp. 3d 723, 745 (E.D. Mich. 2016) (cleaned up).

*First*, Tucker's tortious interference claim fails because the Individual Defendants are agents of MSU. "An essential element of a tortious interference claim is that the defendant is a third party to the contract or business relationship." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 772 (E.D. Mich. 2010). And it is "settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted *solely* for their own benefit *with no benefit to the corporation*." *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993) (emphasis added); *see also Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 630–31 (6th Cir. 2013) (affirming that the plaintiff could not establish a tortious interference claim because the defendant was not a "third party" to the contract and was acting for the benefit of his employer).

Here, Tucker does not allege any facts to support a claim that the Individual Defendants were acting "solely for their own benefit with no benefit to [MSU]." *Reed*, 506 N.W.2d at 233. In fact, Tucker alleges the opposite. *See, e.g.*, ECF No. 1, ¶¶ 267–270, PageID.68–69 (alleging the Individual Defendants acted "in order to

-15-

protect MSU and the MSU athletics program"). These allegations bar his tortious interference claim. *See Maiberger*, 724 F. Supp. 2d at 772.

*Second*, Tucker's claim also fails because he has not plausibly alleged, as required, an *intentional* interference, meaning "a *per se* wrongful act or a lawful act with malice and without justification for the purpose of invading the contractual rights or business relationship of another." *Crestmark*, 155 F. Supp. 3d at 745 (quoting *Urban Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x. 495, 514 (6th Cir. 2007)). If a party's actions are "motivated by legitimate business reasons, a court will not find the improper motive necessary for" a tortious interference claim to survive dismissal.  *Id.* (cleaned up). Here, Defendants' alleged actions do not plausibly reflect intentional unlawful interference, much less interference with *actual malice* (*see infra*, Defamation). Instead, the actions reflect *conformity with* the contract (*see supra*, Breach of Contract) or at least "motivat[ion] by legitimate business reasons." *Maiberger*, 724 F. Supp. 2d at 778 (dismissing tortious interference claim based on conclusory allegations of improper action with malice); *see* ECF No. 1, ¶¶ 267–270, PageID.68–69 (alleging actions "to protect MSU and the MSU athletics program").

**Defamation (Count VI).** Tucker also fails to state a defamation claim because the statements alleged at the September 10, 2023, press conference are not plausibly defamatory, and actual malice has not been alleged with sufficient facts. A

defamation claim requires: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). A plaintiff must allege "the particular defamatory words complained of." *Ledl v. Quik Pik Food Stores, Inc.*, 349 N.W.2d 529, 589 (Mich. Ct. App. 1984). For public figures, moreover, a defamation claim requires "clear and convincing" proof of "'actual malice,' meaning that 'the [statement] was made with knowledge of the falsity of the statements or with reckless disregard of their truth or falsity.'" *Zdravkovski v. Charter Twp. of Redford*, 696 F. Supp. 3d 409, 422 (E.D. Mich. 2023) (citations omitted); *see* MCL 600.2911(6). And that "clear and convincing" burden applies at the pleading stage as well under federal law. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 288 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

Here, Tucker fails to state a plausible claim. *First*, Tucker does not allege facts showing that any statements were *false and defamatory* per se. The only "particular words" that he identifies in his defamation count are "new developments." ECF No. 1, ¶ 275, PageID.70. That is wholly insufficient under Michigan law. Moreover, there *were* some "'new developments,'" even according to Tucker's own allegations: "Tracy's release of more than a thousand pages of confidential OIE

investigative material" that "thrust into the national spotlight" the allegations in question. *Id.* ¶ 180, PageID.52 (emphasis added). That Tucker does not *agree* that these developments "supported" a suspension and eventual termination is not only immaterial, *id.*, ¶ 181, PageID.53, it is also belied by the contract's terms. *See* ECF No. 1-1, § III.B.1, PageID.83 (providing that MSU may *terminate* the contract, if "in the University's reasonable judgment," Tucker's conduct "would tend to bring public disrespect, contempt, or ridicule upon the University"); *see supra* Section I.C. In short, Tucker has not identified a single statement that is false and defamatory.

*Second*, Tucker fails to plead facts supporting "actual malice," as is required to state a claim against a significant public figure like Tucker. *See Briggs v. Univ. of Detroit-Mercy,* 2014 WL 1818000, at *3 (E.D. Mich. May 7, 2014) (noting that "sports figures," including "coaches," "are generally considered public figures") (collecting cases). Tucker's bare assertion that "actual malice" motivated a "new developments" line in a press conference is unsupported by the underlying allegations and wholly insufficient to satisfy federal pleading standards. ECF No. 1, ¶¶ 275, 279, PagedID.70; *see, e.g., Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) (instructing that "conclusory allegations" of "actual malice" are "entirely insufficient"); *Biro*, 963 F. Supp. 2d at 255 (requiring "factual allegations suggesting that [the plaintiff] could plausibly demonstrate by clear and convincing evidence . . . actual malice").

*Aiding & Abetting (Count VII).* Tucker fails to state an aiding-and-abetting claim because Michigan law does not even recognize that cause of action in this context, and, in any event, he fails to state a predicate tort claim.

*First*, the Michigan Supreme Court has "[n]ever held that the phrase 'aiding and abetting' may be placed in front of any tort to create a cause of action for aiding and abetting that tort." *Genesee Intermediate Sch. Dist. v. City of Flint Sch. Dist.*, 2020 WL 4915430, at *12 (Mich. Ct. App. Aug. 20, 2020). Instead, Michigan law recognizes only specific causes of action for aiding-and-abetting tortious conduct, including breach of fiduciary duty, *Nicholl v. Torgow*, 950 N.W.2d 535, 544 (Mich. Ct. App. 2019), and conversion, *Prime Fin. Servs. LLC v. Vinton*, 761 N.W.2d 694, 714 (Mich. Ct. App. 2008). That is, Michigan law does not recognize aiding-and-abetting liability for the defamatory statement Tucker alleges in his Complaint, dooming Tucker's aiding-and-abetting claim at the outset.

*Second*, even if Michigan law recognized an abetting-and-abetting cause of action in this context, Tucker still fails to state a predicate tort claim. He alleges that some defendants aided and abetted others in defaming him. *See* ECF No. 1, ¶ 282, PageID.71. But Tucker's failure to state a defamation claim, *see supra*, means his aiding-and-abetting claim must fail too. *See Nicholl*, 950 N.W.2d at 544 (holding that there is no aiding-and-abetting liability where plaintiffs fail to establish the "independent wrong with respect to their aiding-and-abetting claim"); *Radiant Glob.*

*Logistics, Inc. v. BTX Air Express of Detroit LLC*, 2021 WL 1313236, at \*15 (E.D. Mich. Apr. 8, 2021) (aiding-and-abetting claims "hinge on the existence of the underlying tort").

    ***IIED (Count VIII).*** The IIED claim fails, too, because it cannot exist in the contract context (irrespective of the *Hart* doctrine), and it is also implausible. Such a claim requires: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 449 (6th Cir. 2014). The conduct must exceed "all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1993).

    *First*, "in a contractual setting, a tort action for the intentional infliction of emotional distress must rest on a breach of duty *distinct* from contract." *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1135 (W.D. Mich. 1997) (emphasis added); *see Stopcynski v. Ford Motor Co.*, 503 N.W.2d 912, 915 (Mich. Ct. App. 1993) ("Damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract."). Here, Tucker alleges nothing distinctive in his IIED and breach-of-contract claims. *Compare* ECF No. 1, ¶¶ 259, 261, PageID.67, *with id.*, ¶¶ 288, 290, PageID 71–72. To the contrary, he alleges that the intent was "to terminate" the contract. *Id.* ¶ 288, PageID.71. Because "allegations of wrongful discharge from employment cannot support a claim for the intentional

infliction of emotional distress, as a matter of law," the IIED claim must be dismissed. *Cole*, 984 F. Supp. at 1135 (citing cases).

*Second*, the claim fails on the elements, as well. Tucker does not come close to alleging outrageousness. The "work place setting rarely, if ever, gives rise to [extreme and outrageous] conduct." *Id.* Indeed, "state and federal courts in Michigan have repeatedly held as a matter of law" that termination of employment and actions in the related investigation process are "not sufficiently outrageous to state a cause of action for [IIED]." *Sifuentes v. Laser Access LLC*, 2023 WL 2245710, at *3 (W.D. Mich. Feb. 10, 2023) (citation omitted), *R&R adopted*, 2023 WL 2240503 (W.D. Mich. Feb. 27, 2023). The same goes for any related communications. *See Satgunam v. Kiley*, 2020 WL 13546501, at *3 (W.D. Mich. Nov. 12, 2020) (Maloney, J.) ("[E]ven if their contents are inaccurate or misleading, there is nothing extreme or outrageous about sending a letter or phone call" during an investigation.).

Here, Tucker merely alleges that Defendants conducted a biased investigation intended to justify his termination, made a statement to the press regarding "new developments" in that investigation, and terminated him to protect their own interests. ECF No. 1, ¶¶ 287–297, PageID.71–73. None of that suffices. *See Satgunam*, 2020 WL 13546501, at *3. Nor does Tucker allege severe emotional distress. *Springs,* 567 F. App'x at 450. At most, he merely alleges, in conclusory fashion, that Defendants' conduct "cause[d] Plaintiff severe emotional distress."

-21-

ECF No. 1, ¶ 299, PageID.73. Tucker's "simply reciting the elements of [his] cause of action is insufficient to survive a motion to dismiss." *Parker v. Fed. Exp. Corp.*, 2010 WL 3803459, at *4 (E.D. Mich. Sept. 23, 2010).

## II.    TUCKER'S TORT CLAIMS ARE OTHERWISE BARRED BY FEDERAL AND STATE IMMUNITIES (COUNTS I–III, V–VIII).

Most of Tucker's claims are also barred by federal and state immunities.[2] His common-law tort claims against MSU are barred by state agency immunity, and his claims against its officers are barred by federal and state qualified immunities.

### A.    Tucker's Claims Against MSU and Its Board Are Barred by State Agency Immunity (Counts V–VIII).

To begin, MSU and its Board—which includes its President and Trustees, MCL 390.102—enjoy immunity from any common-law tort claims (Counts V–VIII) under Michigan's Governmental Tort Liability Act (GTLA). *See Siddock v. Grand Trunk W. R.R.*, 556 F. Supp. 2d 731, 735–36 (W.D. Mich. 2008) (Maloney, J.) (explaining why federal courts must also apply GTLA immunity). The GTLA immunizes MSU's Board "from tort liability" to the extent it "engaged in the exercise or discharge of a governmental function." MCL 691.1407. While narrow

---

[2] MSU, through its Board of Trustees, is an Arm of the State of Michigan, and, as a result, enjoys Eleventh Amendment immunity. *See* Mich. Const., art. 8, § 5; *Uraz v. Mich. State Univ. Bd. of Trs.*, 2019 WL 2442314, at *3 (W.D. Mich. June 12, 2019) (Maloney, J.). However, this is a breach-of-contract suit at heart; and the parties consented to this Court's "jurisdiction" for "any suit, action, proceeding or judgment relating to or arising out of [the contract]." ECF No. 1-1, § IV.G, PageID.87. Thus, MSU does not invoke the Eleventh Amendment in this motion.

exceptions exist, a "plaintiff must plead [his] case in avoidance of immunity." *Siddock*, 556 F. Supp. 2d at 736 (citing *Mack v. City of Detroit*, 649 N.W.2d 47, 54 (2002)). The failure to plead in avoidance requires dismissal. *Id.*

As a background rule, moreover, state universities enjoy special constitutional autonomy even apart from the GTLA and other statutes. *See Fed. Publ'ns, Inc. v. Bd. of Trustees of Mich. State Univ.*, 594 N.W.2d 491, 499 (Mich. 1999) (invalidating another state law's application to a personnel decision involving the University's President). That requires additional caution before courts intrude on significant state university "personnel decisions." *Cf. Rudolph v. Lloyd*, 807 F. App'x 450, 457 (6th Cir. 2020) (distinguishing *Federated Publ'ns* in an action involving a custodian).

The GTLA bars any common-law tort claims against MSU's Board. Aside from the breach-of-contract and ELCRA claims, each remaining claim sounds in "tort." MCL 691.1407. Each alleges facts that reflect "the exercise or discharge of a governmental function," *id.*, in connection with a significant personnel decision, *Fed. Publ'ns*, 594 N.W.2d 491. *See, e.g.*, ECF No. 1, ¶¶ 223, 242, 249, 267, 276, 283, 290, PaegID.62, 65–66, 68, 70–72. And none attempts to plead in avoidance of governmental immunity. *Siddock*, 556 F. Supp. 2d at 736 (citing *Mack*, 649 N.W.2d 47). In short, any tort claims against MSU's Board are barred by GTLA immunity.

### B.    Tucker's Claims Against MSU Officers Are Otherwise Barred by Federal and State Qualified Immunities (Counts I–III and V–VIII).

Tucker's federal claims (Counts I–III) and state common-law tort claims (Counts V–VIII) against MSU's officers are also barred by federal and state qualified immunities, respectively.

*First*, as to the Section 1983 and 1981 claims, "[q]ualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights." *Kollaritsch v. Mich. St. Univ. Bd. of Trustees*, 944 F.3d 613, 626 (6th Cir. 2019) (Section 1983); *see Williams v. Zurz*, 503 F. App'x 367, 377 (6th Cir. 2012) (Section 1981). "To survive a motion to dismiss based on qualified immunity, the complaint must allege facts that, if proven to be true, would show the violation of a right so clearly established that a reasonable official would necessarily have recognized the violation." *Kollaritsch*, 944 F.3d at 626. "[D]amage claims against governmental officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Id.* "To defeat [a] claim of qualified immunity," a plaintiff "must do more than make vague and conclusory allegations of discrimination" or the like. *Vaughn v. U.S. Small Bus. Admin.*, 65 F.3d 1322, 1327 (6th Cir. 1995).

Here, Tucker has not alleged facts in Counts I, II, or III showing that any of the Individual Defendants violated clearly established law. In fact, Section 1983 and

-24-

1981 claims, as alleged in these counts, *cannot* violate the law in this context. The Section 1983 due process claims cannot be brought against state officers because the this action's thrust is a breach of contract. *See supra* Section I.A; *Kaminski*, 865 F.3d at 348. The Section 1981 claim cannot be brought at all against state officers. *See supra* Section I.B; *McCormick*, 693 F.3d at 656. In all events, the claims do nothing more than "make vague and conclusory allegations of discrimination" or due process violations both collectively and as to "each defendant," which is insufficient. *Vaughn*, 65 F.3d at 1327. In short, federal qualified immunity bars Counts I–III.

*Second*, as to the state-law claims, officers are immune if (1) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function"; (2) if they "reasonably believe[] [they are] acting within the scope of [their] authority"; and (3) if "[t]he officer[s'] conduct does not amount to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2). As for the last element, the phrase "the proximate cause" "means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000). And again, a "plaintiff must plead [his] case in avoidance of immunity." *Siddock*, 556 F. Supp. 2d at 736 (citing *Mack*, 649 N.W.2d 47).

Here, Tucker's allegations show that MSU was engaged in a governmental function and that the officers were acting within the scope of their authority. *See,*

*e.g.*, ECF No. 1, ¶¶ 32–33, PageID.15 (alleging that "the Administration Defendants" and "Trustee Defendants" "act[ed] under color of state law" and as "authorized" and within their scope of authorities). Nor has Tucker pleaded sufficient facts to show that any specific individual officer's conduct amounted to "gross negligence," much less "gross negligence that [wa]s *the proximate cause* of the injury or damage." MCL 691.1407 (emphasis added); *Robinson*, 613 N.W.2d at 311. Counts V–VII at most plead injuries as "a direct and proximate result" of group-pleaded "Defendants' actions."  ECF No. 1, ¶¶ 272, 280, 285, PageID.69–71. And Count VIII is not even actionable in the context of a contract claim. *See supra* Section II.D. In all events, Tucker has not even attempted to plead in avoidance of GTLA immunity, which alone requires dismissal. *Siddock*, 556. F. Supp. 2d at 736.

## CONCLUSION

The federal courts do not "sit as a 'super-personnel department,' second-guessing management decisions." *Hardesty v. Kroger Co.*, 758 F. App'x 490, 496 (6th Cir. 2019). This is particularly the case when the employer is a state entity. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 391 (2011) (cautioning that unduly interfering with "personnel decisions" and the like "raise[s] serious federalism and separation-of-power concerns," even in the context of a constitutional right). For the foregoing reasons, Defendants request that the Court grant their motion and dismiss Plaintiff's complaint with prejudice.

Dated: October 23, 2024

Respectfully submitted,

/s/ *Terri L. Chase*
Terri L. Chase
JONES DAY
Brickell World Plaza
600 Brickell Ave, Suite 3300
Miami, FL 33131
(305) 714-9700
tchase@jonesday.com

Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
aclopton@jonesday.com

Mark J. Zausmer (P31721)
Michael A. Schwartz (P74361)
ZAUSMER, P.C.
32255 Northwestern Hwy, Suite 225
Farmington Hills, MI 48334
(248) 851-4111
mzausmer@zausmer.com
mschwartz@zausmer.com

*Counsel for Defendants*