## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MELVIN GENE TUCKER II,

                    *Plaintiff,*

v.

BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY,
*et al.*,

                    *Defendants.*

Case No. 1:24-cv-00795

Hon. Paul L. Maloney,
U.S. District Judge

Hon. Phillip J. Green,
U.S. Magistrate Judge

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    Tucker Fails to State a Plausible Claim
      (Counts I–IV, VII–XI)..................................................................1

    A.    Tucker Fails to State a Due-Process Claim
            (Counts I–II)...................................................................1

    B.    Tucker Fails to State a Discrimination Claim
            (Counts III–IV, XI)..........................................................4

    C.    Tucker Fails To State A Breach-Of-Contract Claim
            (Count VII)......................................................................6

    D.    Tucker Fails To State A State-Tort Claim
            (Counts VIII–X)..............................................................10

II.   Tucker's Non-Contract Claims Are Otherwise Barred By Immunities
      (Counts I–III, VIII–X)..............................................................14

    A.    Tucker's Claims Against MSU and Its Board Are Barred By
            State Agency Immunity
            (Counts VIII–X)..............................................................14

    B.    Tucker's Claims Against MSU Officers Are Otherwise Barred
            By Federal And State Qualified Immunities
            (Counts I–III, VIII–X).....................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ........................................................................5, 6

*Adams v. Kemp*,
2023 WL 2522058 (W.D. Mich. Mar. 15, 2023)................................................5

*Alkire v. Irving*,
330 F.3d 802 (6th Cir. 2003) ..........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................5, 6

*Baggett v. Bailey*,
2024 WL 1193050 (W.D. Mich. Mar. 20, 2024)........................................11, 18

*Bauss v. Plymouth Twp.*,
408 F. Supp. 2d 363 (E.D. Mich. 2005),
*aff'd*, 233 F. App'x 490 (6th Cir. 2007) ........................................................15

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 20213),
*aff'd*, 807 F.3d 541 (2d Cir. 2015)..................................................................12

*Brown Jug, Inc. v. Cincinnati Ins. Co.*,
27 F.4th 398 (6th Cir. 2022) ..............................................................................9

*Brugger v. City of Holland*,
2014 WL 2743073 (Mich. Ct. App. May 29, 2014)..........................................8

*Ctr. for Bio-Ethical Reform v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) .............................................................................5

*Convergent Grp. Corp. v. Cnty. of Kent*,
266 F. Supp. 2d 647 (W.D. Mich. 2003)....................................................10, 11

*DiLuzio v. Vill. of Yorkville, Ohio*,
   796 F.3d 604 (6th Cir. 2015) ................................................................4

*Doe v. Bd. of Regents of Univ. of Michigan*,
   2022 WL 18860462 (E.D. Mich. June 16, 2022) .................................1

*Farish v. Dep't of Talent & Econ. Dev.*,
   971 N.W.2d 1 (2021) ..........................................................................17

*Gunasekera v. Irwin*,
   551 F.3d 461 (6th Cir. 2009) .........................................................3, 16

*HDC, LLC v. City of Ann Arbor*,
   675 F.3d 608 (6th Cir. 2012) ................................................................5

*Hart v. Ludwig*,
   79 N.W.2d 895 (Mich. 1956)...............................................................10

*Insight Teleservices v. Zip Mail Servs.*,
   2014 WL 7012653 (E.D. Mich. Dec. 11, 2014) ..................................10

*Jackson v. City of Cleveland*,
   925 F.3d 793 (6th Cir. 2019) ................................................................3

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016)..............................................................13

*Jett v. Dallas Indep. Sch. Dist.*,
   491 U.S. 701 (1989)................................................................................4

*Johnson v. Moseley*,
   790 F.3d 649 (6th Cir. 2015) ........................................................16, 17

*Kaminski v. Coulter*,
   865 F.3d 339 (6th Cir. 2017) ..............................................1, 2, 3, 16

*Kaplan v. Univ. of Louisville*,
   10 F.4th 569 (6th Cir. 2021) .................................................................3

*Kollaritsch v. Mich. St. Univ. Bd. of Trustees*,
   944 F.3d 613 (6th Cir. 2019) ..............................................................16

*Lewis v. Clarke*,
    581 U.S. 155 (2017)............................................................................15

*Merlino v. MGM Grand Detroit, LLC*,
    2004 WL 2050305 (Mich. Ct. App. Sept. 14, 2004) ..........................7

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978)..............................................................................4

*Nicklas v. Koelling*,
    2004 WL 2808904 (Mich. Ct. App. Dec. 7, 2004)............................17

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992)..................................................................................5

*Odom v. Wayne Cnty.*,
    760 N.W.2d 217 (Mich. 2008)............................................4, 16, 17, 18

*People v. Mathews*,
    2021 WL 4024276 (Mich. Ct. App. Sept. 2, 2021) .............................7

*Purisch v. Tenn. Tech. Univ.*,
    76 F.3d 1414 (6th Cir. 1996) ...............................................................3

*Randall v. Delta Charter Twp.*,
    328 N.W.2d 562 (1982) ......................................................................17

*Reed v. Mich. Metro Girl Scout Council*,
    506 N.W.2d 231 (Mich. Ct. App. 1993)............................................11

*Reilly v. Ottawa Cnty., Mich.*,
    2021 WL 3929324 (6th Cir. Sept. 2, 2021) ..........................14, 16, 18

*Roberts v. Auto-Owners Ins. Co.*,
    374 N.W.2d 905 (Mich. 1985)............................................................13

*Ross v. Consumers Power Co.*,
    363 N.W.2d 641 (1984) ......................................................................17

*Satgunam v. Kiley*,
    2020 WL 13546501 (W.D. Mich. Nov. 12, 2020) .............................14

*Siddock v. Grand Trunk W. R.R.*,
    556 F. Supp. 2d 731 (W.D. Mich. 2008) ............................................................18

*Smith v. Dep't of Pub. Health*,
    410 N.W.2d 749 (1987) ...............................................................................15, 17

*Stack v. K-Mart Corp.*,
    1996 WL 33348776 (Mich. Ct. App. Nov. 8, 1996) ...........................................7

*Superior Comm'cns v. City of Riverview, Mich.*,
    881 F.3d 432 (6th Cir. 2018) .........................................................................2, 3

*Sweeney v. Visalus, Inc.*,
    2017 WL 6502935 (Mich. Ct. App. Dec. 19, 2017).........................................7, 8

*Thomas v. John Deere Corp.*,
    517 N.W.2d 265 (Mich. Ct. App. 1994).....................................................6, 7, 8

*United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*,
    647 F. Supp. 3d 587 (E.D. Mich. 2022) ...........................................................10

*Welch v. City of Melvindale*,
    2019 WL 7020744 (E.D. Mich. Dec. 20, 2019) ................................................17

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)..............................................................................................4

*Williams v. Lee*,
    2024 WL 4834917 (Mich. Ct. App. Nov. 19, 2024) .........................................17

**STATUTES**

MCL 691.1407(1) .....................................................................................................15

Perhaps realizing that he has failed a second time to state even one plausible claim, Plaintiff Mel Tucker ratchets up the rhetoric (*e.g.*, "shocking," "egregious," "destruction," "baseless," and "sanctionable"). But the kitchen sink is just as full, and all the claims in it are broken. This case should be dismissed with prejudice.

## I.    Tucker Fails to State a Plausible Claim.

### A.    Tucker Fails to State a Due-Process Claim.

***Due Process (Count I).*** Tucker's claim must be dismissed because "the thrust of [his] argument is simply breach of contract." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017). Tucker cannot seriously dispute that "thrust." *See* ECF 12, ¶ 1, PageID.223 ("This action arises from the Defendants' unlawful termination of Plaintiff's employment…"). And he does not even engage with whether, assuming a property interest exists, "a state breach-of-contract remedy defeats the due-process claim." *Kaminski*, 865 F.3d at 348. Instead, he tries to evade *Kaminski* altogether.

*First*, Tucker discredits *Kaminski* by citing a footnote from an unpublished case (which *dismissed* a due-process claim). *Doe v. UM*, 2022 WL 18860462 (E.D. Mich. June 16, 2022)). That footnote conjectured that "[t]he Sixth Circuit has reversed course since *Kaminski*." *Id.* at n.4 (quoting *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021)). But *Kaplan* (which also *dismissed* a due-process claim) does not mention *Kaminski*. And *Doe*'s footnote stands for the limited proposition that a property interest can stem from contract (which Defendants do not

dispute); it does *not* hold that *deprivation without due process* can be claimed under § 1983 if "the thrust" of the theory is breach of contract. *Kaminski*, 865 F.3d at 348.

*Second*, Tucker says *Ramsey* draws a distinction between "limited bargained-for *benefits*" and a "property interest" in "continued employment." ECF 20, Opp. 4, PageID.487. But *Kaminski* relied on *Ramsey* in announcing its "thrust" test. 865 F.3d at 348. And this purported distinction does not save Tucker's claim because he never had "*tenured* employment." Opp. 4, PageID.487. As *Ramsey* holds, "[w]hen a person is hired for a fixed period of time … and [he] is dismissed prematurely, no federal [claim] lies under section 1983 to redress what is best characterized as an ordinary breach of contract." 844 F.2d 1268, 1273 (6th Cir. 1988). Just so here. ECF 12-1, § III.A, PageID.315 ("this Agreement is effective for a fixed term").

*Third*, Tucker argues that his claim is not "*simply* a breach of contract." Opp. 4, PageID.487. While he lists "non-contractual actions," *id.*, *Kaminski* examines the "*thrust*" of the theory—not the "multi-dimensional" nature of the allegations. *Id.* And here, Tucker reaffirmed the "thrust" is "a breach of contract," even after reviewing *Kaminski* and amending. ECF 12, ¶ 26, PageID.233 (alleging claims "arise under and relate to the Employment Agreement and MSU's breach thereof").

*Kaminski* also bars Tucker's so-called "liberty interests." Opp. 5, PageID.488. Tucker footnotes *Superior*, arguing that it does not apply to his "multi-pronged claims." *Id.* n.3. Whatever that means, it does not distinguish the asserted "liberty

interests" here from the dismissed "liberty interests" there. *Superior Comm'cns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018). Indeed, *Ramsey* and *Kaminski* note the same principles apply to "liberty" "interests." Tucker cites no case citing *Ramsey* or *Kaminski* that holds that an alleged interest in "reputation" and the like can end-run them. And the case Tucker cites *defeats* his theory because he *also* failed to allege that he "request[ed] a name-clearing hearing." *Kaplan*, 10 F.4th at 584.

*Fourth*, Tucker cites two cases (neither cites *Ramsey* and each pre-dates *Kaminski*), averring that supposed policy violations also support a claim. But one confirms the inquiry is "*not* whether [the defendant] conformed to [its] procedure." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996) (emphasis added). *See* Opp. 6, PageID.489 (admitting that "the FAC alleges violations of those rules"). And the other examines whether a policy can create a "property interest," *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009), not whether "a state-breach-of-contract remedy defeats the due-process claim," *Kaminski*, 865 F.3d at 348.

**Conspiracy (Count II).** As Defendants explained, Tucker's conspiracy claim fails thrice over. Tucker does not dispute that this claim must fail if the due-process claim fails. Opp. 8, PageID.491. And his two arguments falter. Tucker alleges that Defendants were "acting" *together* and *within* "the scope of their employment." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). *E.g.*, ECF 12, ¶ 33 (alleging "MSU, through [the Individual Defendants] … developed and executed a

plan"), ¶ 256 (alleging "the Individual Defendants undertook together … to create a vehicle for MSU"). Tucker cites a pre-*Jackson* case that is inapt because the alleged conduct here also fell entirely *outside* the scope of employment. *DiLuzio v. Yorkville*, 796 F.3d 604 (6th Cir. 2015). And Tucker's recitation of conclusory allegations don't make them more plausible. MTD 5, PageID.430.

### B.    Tucker Fails to State a Discrimination Claim.

***Section 1981 (Count IV).*** Tucker's § 1981 claim against MSU is categorically barred. In response, Tucker says that his claim is not barred because MSU waived Eleventh Amendment immunity in his contract. Opp. 11, PageID.494. But Tucker fails to appreciate that *Jett*—a binding Supreme Court case that he fails to address— does *not* depend on the Eleventh Amendment. The words "Eleventh Amendment" and "immunity" don't appear in *Jett*.[1] *Grinter* extended *Jett* to state actors in their official capacities, 532 F.3d 567, 577 (6th Cir. 2008), and *McCormick* extended *Jett* further to state actors "in their individual capacities." 693 F.3d 654, 661 (6th Cir. 2012). And that *McCormick also* held that a § 1981 claim was barred by immunity says nothing about whether *Jett* bars it, too. *See Grinter*, 532 F.3d at 577; *cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("the scope of the Eleventh Amendment and the scope of § 1983 are ['certainly'] separate issues").

---

[1] Indeed, *Jett* barred claims against "municipalities," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989), even though they do *not* enjoy immunity, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.54 (1978).

Tucker also accuses Defendants of "erroneously rely[ing]" on *Qiu v. University of Cincinnati*—a phantom case that appears nowhere in Defendants' motion—and of "repeated misstatements of the law of this Circuit." Opp. 11 & n.7, PageID.494. These statements are not only false, but also ironic, given that Tucker ignores and misstates (or misunderstands) the law that forecloses his § 1981 claim.

***Section 1983 & ELCRA (Counts III, XI).*** Tucker cannot dispute that "conclusory allegations of discriminatory intent" are insufficient. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). Nor can he dispute that there must be "a plausible allegation [of] similarly situated … individuals," *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011), "in all relevant respects," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). His responses fail.

*First*, Tucker says that he need not identify a comparator because he need not establish a "prima facie case." Opp. 14, PageID.497 (citing *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012)). That is a red herring. Courts routinely dismiss discrimination claims at this stage for failing to "identif[y] any similarly situated individuals." *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir. 2013) (citing *Keys*, 684 F.3d at 610); *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379; *see, e.g.*, *Adams v. Kemp*, 2023 WL 2522058, at *4 (W.D. Mich. Mar. 15, 2023) (Maloney, J.); *see also Iqbal*, 556 U.S. 662 (2009) ("[D]iscrimination is not a plausible conclusion.").

*Second*, perhaps recognizing that he bears a burden, Tucker attempts to point to "similarly situated white coaches and employees." Opp. 12, PageID.495. But the only purported comparator with the same job and responsibilities—Coach Dantonio, *whom Tucker replaced*—did not engage in conduct remotely like Tucker. *Compare id.* ("recruiting violations"), *with* ECF 12-4, PageID.346 (comments re: "appearance, flirtation, and phone sex"). And the others fare no better, as already explained.

Discriminatory intent is especially implausible given the "obvious alternative explanation" for termination that appears on the FAC's face and exhibits. *Iqbal*, 556 U.S. at 662. At no time did Tucker (represented by counsel) ever suggest racial discrimination during the notice-and-comment period, which further supports "the strength of competing explanations for [MSU's] conduct." *16630 Southfield*, 727 F.3d at 504. And it is not "Defendants" who "assert[] that they terminated Plaintiff for financial reasons," Opp. 15, PageID.498—it is *Tucker*. ECF 12, ¶ 5, PageID.225 (alleging pretext "to evade Defendants' significant financial obligation").

## C.   Tucker Fails to State a Breach-of-Contract Claim.

Tucker also fails to state a breach claim *(Count VII)* because it is unreviewable per *Thomas*—and implausible.

**1.** Tucker's claim is unreviewable because his contract allowed MSU to fire him based on its own "reasonable judgment." Tucker does not dispute that this clause was an independent basis for termination, and his two responses fail.

-6-

*First*, Tucker recognizes *Thomas* as controlling on its question of law but argues that the word "reasonable" in his contract somehow "confirms that [MSU's] decision" must have been "subject to judicial review." Opp. 16, PageID.499. But Tucker's sole support is an irrelevant and unpublished *criminal* case addressing the "reasonableness" of *a Fourth Amendment search. Id.* (citing *People v. Mathews*, 2021 WL 4024276, at *3 (Mich. Ct. App. Sept. 2, 2021)).

And Tucker fails to meaningfully distinguish the cases Defendants cited. To take just one example, *Sweeney* (which is far more on-point than *Merlino*) rejected an argument that the "best judgment" language there was "materially distinct" from the "sole authority" language in *Thomas*. 2017 WL 6502935, at *8 (Mich. Ct. App. Dec. 19, 2017). This Court should reject Tucker's identical argument. Opp. 17, n.13, PageID.500 (arguing that "reasonable judgment" is distinct from "sole authority").

*Second*, Tucker says *Thomas* is inapplicable because his contract lacked pre-termination procedures. Opp. 18, PageID.501. Initially, Tucker misconstrues *Thomas*, which holds that a decision is unreviewable where the employer "reserve[s] for itself" a termination decision, "in the manner provided in the … contract." 517 N.W.2d at 95; *Stack v. K-Mart*, 1996 WL 33348776, at *2 (Mich. Ct. App. Nov. 8, 1996); *see Merlino v. MGM Grand Detroit, LLC*, 2004 WL 2050305, at *4 (Mich. Ct. App. Sept. 14, 2004) ("So long as the employer follows the procedures it has provided in the contract, [its] decision that just cause for termination existed does

not equate to a breach of contract and is not subject to review by the courts, even though just cause may not have actually been present.").

More to the point, Tucker's contention that "no process was followed," Opp. 20, PageID.503, is self-contradicted. Tucker's contract required MSU to provide him with "written notice, specifying the grounds for termination" and an "opportunity to present reasons … as to why he should not be terminated[.]" ECF 12-1, PageID.315. MSU did just that. ECF 12-3, PageID.325-29; ECF 12-4, PageID.343-54. Tucker's contrary assertion only highlights his failure to evade *Thomas*.

Indeed, Tucker's reliance on *Thomas* and other cases to argue procedural inadequacy helps prove the point. As he recognizes (Opp. 19, n.14, PageID.502), those cases involved different procedures, underscoring that no *one* procedure is necessary for *Thomas* to apply. And other cases, including *Sweeney*, applied *Thomas* without analyzing procedure at all. *E.g.*, *Sweeney*, 2017 WL 6502935, at *8; *Brugger*, 2014 WL 2743073, at *2 (Mich. Ct. App. May 29, 2014).

**2.** Even if Tucker's termination were reviewable, his claim would fail because he does not plausibly allege that MSU lacked cause. Tucker admits he engaged in "extramarital" "flirtation" "and phone sex" with a sex-abuse survivor hired by MSU to educate the team on sexual misconduct. ECF 12-3, PageID.325-27; ECF 12-4, PageID.346-48. MSU determined that this behavior brought public disrepute on it and violated basic ethical and professional standards. And because Tucker's

-8-

"allegations" are at most "merely consistent with" a breach, the claim fails. *Brown Jug*, 27 F.4th 398, 404 (6th Cir. 2022). Tucker's retorts fall flat.

Tucker says "issues of fact" prevent dismissal. Opp. 20, PageID.503. *First*, he says the "termination decision" has an embedded fact dispute over whether "Plaintiff engaged in *unwanted* sexual conduct" with or made "*unwelcomed* comments" to Tracy. Opp. 17-21, PageID.500-04. But MSU based its termination on these undisputed facts: (1) "comment[s] to [Tracy] about her looks, body, and body parts, specifically her 'ass'"; (2) "flirtatious comments"; and (3) "masturbat[ion] and … sexually explicit comments …, which [Tucker] describe[d] as 'phone sex' and 'a late-night intimate conversation.'" ECF 12-3, PageID.326. Tucker admits these adulterous things occurred. And as Defendants have shown, consensual or not, these facts provided MSU with several bases to terminate the contract. That is, Tucker's conduct was unethical and brought "disrespect, contempt, and ridicule upon [MSU]." *Id.*; *see* ECF 12-3, PageID.328 (citing media articles).

*Second*, Tucker pivots to say his "phone calls" were "private." Opp. 21, PageID.504. But the notice actually adopts his characterization. ECF 12-3, PageID.326 (noting the "late-night intimate conversation[s]" that "happened often"). Nowhere does it provide that he was being terminated based on *where* the conduct occurred. Instead, he was terminated *because* the misconduct occurred. And Tucker does not respond to the argument that his "off-duty" defense is precluded by the

-9-

contract's requirement that he act "professionally and ethically … *at all times*." ECF 12-1, § I.C.15, PageID.310 (emphasis added).

### D. Tucker Fails to State a State-Tort Claim (Counts VIII–X).

***Hart Doctrine.*** Tucker's tort claims in Counts VIII–X are "based upon the same conduct giving rise to the [] alleged breach of contract," *Convergent*, 266 F. Supp. 2d 647, 660-61 (W.D. Mich. 2003), or otherwise have "operative allegations" that "would not [have] arise[n] without the existence of the [] contract[]," *Merchants*, 800 F. Supp. 1490, 1493 (W.D. Mich. 1992). As a result, *Hart* bars the claims. Tucker offers two responses, and both fail.

*First*, Tucker asserts that *Hart* is "inapplicable as a matter of law" because the "economic loss doctrine" does not apply to "a service contract." Opp. 23, PageID.506. But that conflates two doctrines. "It is unnecessary for the Court to decide whether the economic loss doctrine also applies to service contracts" because the claims are "subject to dismissal under [the] *Hart* rule." *Convergent*, 266 F. Supp. 2d at 660; *see UWM v. Am.'s Moneyline*, 647 F. Supp. 3d 587, 595 & n.1 (E.D. Mich. 2022); *Insight Teleservs. v. Zip Mail Servs.*, 2014 WL 7012653, at *10-11 (E.D. Mich. Dec. 11, 2014) (both noting the distinction and dismissing claims involving service contracts under *Hart*).

*Second*, Tucker asserts that his "tort claims do not arise out of the contract." Opp. 23, PageID.506. But he does not address his own allegations that make clear

-10-

that the thrust of the claims do. MTD 17 (citing 10 paragraphs). And he never explains how *all* these claims are not "based upon the same conduct giving rise to the [] alleged breach of contract," *Convergent*, 266 F. Supp. 2d at 660-61; or the like, *Merchants*, 800 F. Supp. at 1493. Tucker's failure to meaningfully respond to this argument "amounts to a waiver." *Baggett v. Bailey*, 2024 WL 1193050, at *5 n.6 (W.D. Mich. Mar. 20, 2024).

**Tortious Interference (Count VIII).** Tucker's claim fails because he cannot sue MSU's agents for interference with MSU's contract, and he does not allege intentional interference or actual malice.

*First*, Tucker consigns Defendants' cases to a footnote, asserting that "they all involve actions undertaken within their employment duties." Opp. 24, n.16, PageID.507. But again, he does not explain *how* the Individual Defendants acted "solely for their own benefit with no benefit to the corporation." *Reed*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993). Rather, he alleges that their actions were undertaken, *e.g.*, "to protect [MSU's] reputation." ECF 12, ¶ 9, PageID.226.

*Second*, Tucker argues that the Individual Defendants were not "motivated by legitimate business reasons." Opp. 24, PageID.507. But the same argument above defeats it, too. It is axiomatic that "effort[s] to protect [MSU's] reputation," even if "misguided," ECF 12, ¶ 9, reflect legitimate reasons. Tucker offers no caselaw to support his assertion that this issue "cannot be resolved on a motion to dismiss."

-11-

Opp. 25, PageID.508. And Defendants' cases that Tucker relegated to a footnote resolve the issue *on motions to dismiss.*

**Defamation (Count IX).** Tucker's claim fails because a "new developments" line at a press conference is not plausibly defamatory, and Tucker failed to allege actual malice. In response, Tucker concedes that his claim hinges on the words "new developments." Opp. 25, PageID.508. He admits that he must plead facts to plausibly support "actual malice." *Id.* And he cites only two random cases—and does not address, much less distinguish, Defendants' six cases.

*First*, Tucker nevertheless calls "new developments" "false and defamatory," because it "convey[ed] that Plaintiff had engaged in further misconduct." *Id.* Merely to recite these words shows that they are not false or defamatory. Tucker admits that allegations against him were "thrust into the national spotlight." ECF 12, ¶ 182, PageID.273. He says these don't qualify as "new developments." Opp. 26, PageID.509 ("simply a cover"). Even crediting that framing, however, doesn't mean that there were *no* "new developments." Indeed, he alleges "the fact that the matter became public … was the basis for [termination]." *Id.* And the contract permitted termination for perceived "public disrespect, contempt, or ridicule." *Supra.*

*Second*, Tucker re-declares that "new developments" reflects "actual malice." Opp. 26, PageID.509. But he does not point to *facts* to support actual malice, much less under a "clear and convincing" standard. *E.g., Biro v. Conde Nast*, 963 F. Supp.

2d 255, 288 (S.D.N.Y. 20213), *aff'd*, 807 F.3d 541 (2d Cir. 2015). Even Tucker's framing belies "actual malice"; "self-preservation" is not "the very definition of … actual malice." Opp. 27, PageID.510. To the contrary: "some ulterior motive" is *not* "enough." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016).

   ***IIED (Count X).*** Tucker's claim fails to allege a breach separate from contract and is not plausible. Tucker's responses falter here, too.

   *First*, Tucker says his claim "is predicated upon Defendants' malicious campaign to impugn his reputation and destroy his future earnings potential," rather than a breach of contract. Opp. 28, PageID.511. He points to one conclusory allegation that the Individual Defendants attempted to "deprive Plaintiff of his ability to earn a living[.]" ECF 12,  ¶ 336. But Tucker makes no attempt to explain how that alleged effort is distinct from the alleged breach. And he fails to distinguish Defendants' cases. Opp. 28, n.18, PageID.511; *see* ECF 12, ¶¶  332-38 (also alleging "emotional distress" in connection with termination); *supra*.

   *Second*, Tucker contends that Defendants' "conduct ... 'exceeds all possible bounds of decency, and were atrocious, and intolerable in a civilized community.'" Opp. 28, PageID.511. Tucker cites ECF 12, ¶ 331, PageID.302, but it states the same legal conclusion. He identifies no facts to support one element of IIED, much less all of them. Indeed, his lead case supports Defendants. *See Roberts*, 374 N.W.2d 905, 911 (Mich. 1985) ("far short of the conduct which is [] tortiously outrageous").

Doubling down, Tucker argues that "Defendants' conduct went far beyond …
*Ogle*." Opp. 28, PageID.511. But there, the plaintiff alleged that a bishop
"deliberately spread false rumors of [plaintiff's] homosexual inclinations on
multiple occasions to large audiences." 279 F. App'x 391, 400 (6th Cir. 2008).
Tucker alleges nothing of that sort. At best, he alleges a biased investigation to
justify his termination, a "new developments" statement, and a termination to protect
MSU. That "does not come close to alleging the type of 'extreme and outrageous'
conduct necessary to plead a claim for IIED." *Satgunam*, 2020 WL 13546501, at *3.

## II. Tucker's Non-Contract Claims Are Otherwise Barred by Immunities.

### A. Tucker's Claims Against MSU and Its Board Are Barred by State-Agency Immunity.

MSU and its Board (including its President and Trustees) are immune from
common-law tort claims *(Counts VIII–X)*, and even more so given their
constitutional autonomy in high-level personnel decisions. Tucker's two points fail.

*First*, Tucker says immunity is not proper "at the motion to dismiss stage."
Opp. 29, PageID.512. But this improperly seeks to shift the burden. *The plaintiff*
"must initially plead his claims in avoidance of governmental immunity." *Odom*,
760 N.W.2d 217 (Mich. 2008). And "avoidance" requires "well-pled allegations"
for a "plausible" claim. *Reilly v. Ottawa Cnty.*, 2021 WL 3929324, at *7 (6th Cir.
Sept. 2, 2021). There are none here.

-14-

*Second*, Tucker says that "the only tort claim alleged against MSU is 'Count X for IIED.'" Opp. 30, PageID.513. But MSU is not plausibly alleged to have *itself* committed, say, the tort of IIED—it is alleged that "MSU" acted "through its … Board of Trustees" and others. *E.g.*, ECF 12, ¶ 33, PageID.234. And to the extent the Trustees and President (a board member) were acting in their official capacities, they enjoy the same immunity. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("individuals sued in their official capacities stand in the shoes of the entity they represent"). If Tucker attempts to disclaim any official-capacity claims, it only underscores that whatever claims against the board members exist lack merit. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("personal-capacity suits" "seek to impose *individual* liability … for [*individual*] actions under color of state law"); *infra* ("proximate cause" is required for claims against individuals).

The IIED claim, moreover, does *not* evade immunity. Tucker cites *Bauss*, 408 F. Supp. 2d 363 (E.D. Mich. 2005), which cites a pre-GTLA case from 1984. Opp. 30, PageID.513. But that case is wrong: "no intentional tort exception exists" for governmental agencies. *Smith*, 410 N.W.2d 749, 772 (Mich. 1987); MCL 691.1407(1) (all "tort liability").

### B.    Tucker's Claims Against MSU Officers Are Otherwise Barred by Federal and State Qualified Immunities.

Tucker's federal claims *(Counts I–III)* and state common-law tort claims *(Counts VIII–X)* against MSU's officers are also barred. Tucker has not alleged

-15-

facts that any individual "violate[d] clearly established rights," *Kollaritsch*, 944 F.3d 613, 626 (6th Cir. 2019), acted with "malice," *Odom*, 760 N.W.2d at 228, or proximately caused his injuries, *Reilly*, 2021 WL 3929324, at *7.

*First*, Tucker argues against federal qualified immunity for the "due-process claims" in Counts I and II. Opp. 7, PageID.490. Of course, Defendants *also* invoked qualified immunity for "Count III"—the Equal Protection Claim. MTD 26-27, PageID.451-52 (citing *Vaughn*, 65 F.3d 1322, 1327 (6th Cir. 1995)). Tucker's failure to respond to that argument as to Count III is a waiver. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (once a defendant "raise[s] the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity" for each claim).

Back to due-process, Tucker again attempts to shift the burden. And he does not establish a *constitutional* violation as to each defendant, much less one clearly established. *Id.* ("the allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law"). The *only* case in the neighborhood that Tucker cites is *Gunasekera*, 551 F.3d at 471. But that case does not even cite *Kaminski*. *Supra*. And it is inapt, as the plaintiff there "was not given notice or an opportunity to be heard," *Gunasekera*, 551 F.3d at 468, and here Tucker was given both. *Supra.* Thus, Tucker has failed to carry his burden to show that each officer "personally violated [his]

rights under clearly established law," "in light of the specific context of the case." *Johnson*, 790 F.3d at 653.

*Second*, citing two confused unpublished cases,[2] Tucker initially asserts that *no* defamation or tortious-interference claims are barred merely because these are "intentional tort claims." Opp. 32, PageID.515. But he has no real response to Defendants' footnote 7, or to *Odom*, so he admits that *Odom* applies. 760 N.W.2d at 223 (providing "immunity" from "intentional-tort liability").

Tucker argues that "Defendants cannot meet this standard." Opp. 32, PageID.515. He admits the acts were discretionary but takes issue with the other two components. *First*, he declares "that the Individual Defendants could not possibly have reasonably believed they were acting within the scope of their authority." *Id.* But his *own allegations* show that they *were* acting within the scope of employment. *Supra*; *see* ECF 12, ¶¶ 32-33, PageID.234.

*Second*, Tucker asserts that the Individual Defendants "engaged in a course of bad faith" and "malicious conduct in utter disregard of [his] rights." Opp. 33,

---

[2] *Nicklas*, 2004 WL 2808904 (Mich. Ct. App. Dec. 7, 2004), on which *Welch*, 2019 WL 7020744 (E.D. Mich. Dec. 20, 2019) relies, pre-dates *Odom* and relied on two red-flagged cases (*Tocco* and *Randall*) that pre-date *Ross*, 363 N.W.2d 641 (Mich. 1984)—the case that restored "individual governmental immunity from *all* tort liability." *Odom*, 760 N.W.2d at 221 ("reaffirm[ing] and restat[ing]" *Ross*); *see Williams*, 2024 WL 4834917, at *4 (Mich. Ct. App. Nov. 19, 2024) (citing *Frohriep*, 754 N.W.2d 912 (Mich. 2008)) (*Ross* "abrogat[ed]" *Tocco*); *Farish*, 971 N.W.2d 1, 5 (Mich. Ct. App. 2021) (*Smith* abrogated *Randall*). And *Randall* also "ruled that activities [*were*] entitled to immunity." 328 N.W.2d 562, 565 (Mich. Ct. App. 1982).

PageID.516. He cites the FAC's first 22 paragraphs in support—but that is the same old boilerplate. *E.g.*, ECF 12, ¶ 1, PageID.223 ("…they acted with actual malice and in willful disregard of Plaintiff's rights"); *see supra* (no actual malice). By any measure, Tucker does not plausibly "plead his claims in avoidance of governmental immunity." *Odom*, 760 N.W.2d at 227; *Siddock*, 556 F. Supp. 2d at 736.

Finally, Tucker offers *nothing* on proximate causation as to each defendant; that qualifies as a forfeiture on an argument on all claims. MTD 28, PageID.453; *Reilly*, 2021 WL 3929324, at *7-8; *Baggett*, 2024 WL 1193050, at *5 n.6.

*    *    *

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated: February 10, 2025                    Respectfully submitted,

/s/ *Terri L. Chase*
Terri L. Chase
JONES DAY
600 Brickell Ave, Suite 3300
Miami, FL 33131
(305) 714-9700
tchase@jonesday.com

Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
aclopton@jonesday.com

*Counsel for All Defendants*

-18-

Mark J. Zausmer (P31721)
Michael A. Schwartz (P74361)
ZAUSMER, P.C.
32255 Northwestern Hwy, Suite 225
Farmington Hills, MI 48334
(248) 851-4111
mzausmer@zausmer.com
mschwartz@zausmer.com

*Counsel for All Defendants*

Maurice G. Jenkins (P33083)
Elyse K. Culberson (P82132)
JACKSON LEWIS, P.C.
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
Maurice.Jenkins@jacksonlewis.com
Elyse.Culberson@jacksonlewis.com

*Counsel for Defendants Dennis Denno
and Rema Vassar*